MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. D. H. BYRD.

Decided January 20, 1910.

**1.—Railway—Stock Unlawfully at Large—Negligence.**

The fact that stock discovered on a railway track was unlawfully at large does not excuse its negligent killing. Those operating the train were not required to keep a lookout for stock at points where they could not lawfully be; but, discovering them there, if they injured them by negligence, the company was liable.

**2.—Same—Unlawful Speed—Causal Connection.**

Evidence considered and held to support a finding that negligence in running a train in town at unlawful speed was a cause of the injury to a horse struck by reason of inability to stop the train in time after discovering the animal on the track.

Appeal from the County Court of Hopkins County. Tried below before Hon. F. W. Patterson.

*Coke, Miller & Coke* and *L. L. Wood,* for appellant.—The horse was unlawfully at large, at least so far as the rights of appellant were concerned. International & G. N. R. Co. v. Cocke, 64 Texas, 151; International & G. N. R. Co. v. Dunham, 68 Texas, 231; Frazer v. Bedford, 66 S. W., 573; Missouri, K. & T. Ry. Co. v. Tolbert, 100 Texas, 483; Texas & P. Ry. Co. v. Webb, 114 S. W., 1170; Acts of Legislature 1905, sec. 20a, p. 226.

Should it be conceded that the evidence is sufficient to show negligence on the part of the train operators, in running said train, it is

insufficient to show a causal connection between such negligence and the injury, and such causal connection can not be presumed. Chicago, R. I. & G. Ry. Co. v. Latham, 53 Texas Civ. App., 210; Texas & P. Ry. Co. v. Shoemaker, 98 Texas, 451.

*J. M. Wilson,* for appellee.

WILLSON, CHIEF JUSTICE.—A mare belonging to appellee was struck and thereby killed by one of appellant's trains while same was being operated at a point within the corporate limits of the town of Sulphur Springs, where appellant was not required to fence and had not fenced its track. An ordinance of that town, in force at the time, declared it to be unlawful for horses, etc., to run at large within its limits; and another ordinance, also in force at the time, declared it to be an offense punishable by a fine for any engineer or other person to "run a steam engine on any railroad within the city limits at a greater rate of speed than six miles per hour." The animal had escaped from appellee's enclosure and at the time she was killed was running at large on appellant's track. The court found that the animal was running at large without appellee's knowledge or consent and without fault on his part, and, therefore, not in violation of said ordinance, and further found that she was killed as a result of negligence on the part of appellant in running its train in violation of said ordinance at a rate of speed in excess of six miles per hour, and concluded as a matter of law that appellant was liable to appellee for the value of the animal. The judgment accordingly rendered is attacked by appellant on the ground (1) that the court's finding that the animal was not running at large in violation of the ordinance was erroneous; and (2) that his finding that the animal was killed as the result of appellant's negligence was not supported by the evidence. The finding that the animal was not running at large in violation of the ordinance, though it may have been erroneous, would not require a reversal of the judgment, if the court's finding that the death of the animal was proximately caused by negligence on the part of appellant can be said to have been authorized by the evidence. For, although the animal may have been at large, and a trespasser on appellant's track in violation of the ordinance, if appellant's negligence was the proximate cause of her death it would be liable to appellee for her value. International & G. N. Ry. Co. v. Cocke, 64 Texas, 154; Missouri, K. & T. Ry. Co. v. Tolbert, 100 Texas, 483, 101 S. W., 208. If the animal was unlawfully at large, it was not appellant's duty in operating its trains to keep a lookout for her, and if her position on its track had not been discovered by its servants at all or in time by the use of ordinary care to avoid injuring her, and she had been killed, it would not be liable. Missouri, K. & T. Ry. Co. v. Russell, 43 S. W., 576; Houston & T. C. Ry. Co. v. Nichols, 39 S. W., 954. But, notwithstanding she may have been unlawfully at large, if appellant's employes in charge of its train discovered her on its track, and, after discovering her, in operating its train by the exercise of ordinary care could have avoided injuring her, and she was killed because it failed to exercise such care, it

would be liable. From the evidence in the record it seems that at the time the animal was killed the train was approaching the depot in Sulphur Springs from the west, and had crossed League Street going east. North of League Street about twenty-four feet from appellant's track were its stock pens. Appellant's witness, Gray, the fireman on the engine at the time, testified that the animal ran out from the east side of the stock pens and "jumped on the track right in front of the engine. . . . When that animal first got on the track it was about thirty-five or forty feet from the engine. When I first noticed that animal it was coming across the sidetrack which is next to the stock pen. I hollered at the engineer to look out when I saw the animal coming on to the main track, and the engineer immediately blew the whistle and applied the brakes at about the same time, and the engine came almost to a standstill, but did not exactly stop, and then I hollered at the engineer 'all right,' and he went ahead and I told him that he had killed a mule, and I thought it was a mule at that time." The animal was killed about 12 o'clock at night. Appellee testified that on the next morning after she was killed he found her tracks showing she had gone upon appellant's track at a point directly opposite the west instead of the east corner of the stock pens as testified to by the fireman. Appellee further testified: "I could see the mare's tracks on the railroad, and it seemed that she was run about 100 feet, that is, from the appearance of the track, and it seemed from the tracks that she was running east. . . . I tracked her to where the engine struck her, and it was twelve feet from the west corner of the stock pen, and they run her about 100 feet before they hit her." Neither the engineer nor the fireman in charge of the locomotive of the train undertook to say how fast it was running. Another witness, however, testified that it was moving at the rate of ten or twelve miles per hour, adding, "I don't think the speed of the train exceeded ten miles per hour." The evidence we have referred to was sufficient to support findings by the trial court that the mare got upon the track at a point thirty-five or forty feet in front of the approaching train; that the fireman saw her as she ran upon the track; that after getting upon the track she ran east on same, ahead of the train, a distance of 100 feet before the locomotive struck and killed her; and that the train at the time, in violation of the ordinance, was running at a speed in excess of six miles per hour. That the negligence of appellant's employes in charge of the train, in operating it at a speed prohibited by the ordinance, was the proximate cause of the death of the mare, was, we think, an inference the court had a right to draw from such findings. Had the train not been moving at a speed in excess of six miles per hour, and had the mare run upon the track thirty-five or forty feet in front of it and gone east in the direction it was moving, it is hardly probable it would have overtaken and killed her in a distance of 100 feet, or at all. The judgment is affirmed.

*Affirmed.*